UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHELSEY GREAVES,

     Plaintiff,                     Case No. 2:20-cv-12131

                                  District Judge Laurie J. Michelson

v.                           Magistrate Judge Kimberly G. Altman

COMMISSIONER OF SOCIAL
SECURITY ADMINISTRATION,

     Defendant.

_____/

## REPORT AND RECOMMENDATION ON CROSS MOTIONS FOR SUMMARY JUDGMENT

### I.     Introduction

This is a Social Security case. Plaintiff Chelsey Greaves ("Greaves") brings this action under 42 U.S.C. § 405(g), challenging the final decision of Defendant Commissioner of Social Security ("Commissioner") denying her application for Disability Insurance Benefits ("DIB") under the Social Security Act ("the Act"). Both parties have filed summary judgment motions (ECF Nos. 11, 17), which have been referred to the undersigned for a Report and Recommendation under 28 U.S.C. § 636(b)(1)(B).

For the reasons set forth below, it is RECOMMENDED that the Commissioner's for Summary Judgment (ECF No. 17) be GRANTED and that Greaves' Motion for Summary Judgment (ECF No. 11) be DENIED.

## II.    Background

### A.    Procedural History

Greaves was 39 years old at the time of the November 27, 2017 alleged onset date.  (ECF No. 9, PageID.173).  She has a high school education and worked previously as a bank teller and credit counselor.  (*Id*., PageID.204).  She alleges disability due to depression; concentrational and memory problems; impulsivity and distractibility; sleep disturbances; pressured and rapid speech; feelings of guilt or worthlessness; suicidal thoughts; agitation; interpersonal problems; and appetite changes.  (*Id*., PageID.202).

After Greaves' DIB application was denied at the initial level on August 14, 2018, she timely requested an administrative hearing, held August 22, 2019, before Administrative Law Judge ("ALJ") Janet L. Alaga-Gadigian.  (*Id*., PageID.62, 113).  Greaves, represented by Elizabeth Curry, testified, as did a Vocational Expert ("VE").  (*Id*., PageID.66-91, 91-96).

Greaves offered the following testimony:

She stood 5' 8" and weighed 180 pounds.  (*Id*., PageID.66).  She had a driver's license and was able to drive.  (*Id*., PageID.67).  She lived in Fraser,

Michigan with her husband and three children. (*Id*.). After leaving work in November 2017, she qualified for short-term disability benefits for the following six months. (*Id.*, PageID.68). She left her most recent job after having a "nervous breakdown" at work due to extreme stress. (*Id.*, PageID.78). She was soon after diagnosed with "an extreme case of anxiety." (*Id.*, PageID.78). Her workplace behavior included yelling at customers and "going off" on other staff members. (*Id.*, PageID.79). During an earlier work stint, she locked herself in a workplace bathroom and swallowed a handful of pills in a suicide attempt. (*Id*., PageID.78). In the two years before the hearing, she made multiple suicide attempts. (*Id*.). She hid her attempts due to her fear of being institutionalized, adding that she underwent a two-year hospitalization for mental problems as a child. (*Id*., PageID.78-79).

In response to questioning by her attorney, Greaves testified that she continued to experience panic attacks two to three times a month lasting for about one hour. (*Id*., PageID.80). The attacks were characterized by heart palpitations, shaking, and panic. (*Id.*, PageID.80). She coped with the attacks by going to her bedroom, lying down, and listening to music or watching television. (*Id*., PageID.81). Despite the use of psychotropic medication, she continued to experience symptoms bipolar disorder. (*Id.*, PageID.81-82). She experienced periods of sleeplessness and depression intermittently. (*Id.*, PageID.82). During

the depressive episodes, she cut herself and experienced suicidal ideation. (*Id.*, PageID.83). She "[went] off" on her husband when he "set[] her off," and believed that other people were staring at her and talking about her when she went out in public. (*Id.*, PageID.83-84). She experienced road rage when she believed someone's car was too close to hers. (*Id.*, PageID.84). She purchased most of her groceries online to avoid interaction with others. (*Id.*).

In addition to the mental health conditions, Greaves experienced back pain requiring her to recline and use a heating pad most days. (*Id.*). She was required to switch positions every 30 minutes due to back pain. (*Id.*). She experienced only partial relief from pain medication. (*Id.*, PageID.85). She obtained relief by lying flat on her back. (*Id.*). She could stand for one hour before requiring a position change and was able to walk for up to two blocks. (*Id.*, PageID.54-55). She was unable to lift more than "a gallon of milk and maybe a bag." (*Id.*, PageID.86). Her children helped with household chores. (*Id.*, PageID.87). Due to depression, she sometimes neglected to shower or dress and was unable to perform household chores at least four days a week. (*Id.*).

In response to additional questioning by the ALJ, Greaves testified that she had undergone steroid injections for the back condition multiple times. (*Id.*). A treating medical source had recommended back surgery. (*Id.*, PageID.88). She currently took Tylenol 800, Tizanidine, and Gabapentin and used lidocaine

patches for the back condition.  (*Id.*, PageID.89).  She experienced the medication side effects of non-severe drowsiness, nausea, and dry mouth.  (*Id.*, PageID.89). She cancelled a number of mental health appointments in October 2018 due to food poisoning and financial constraints.  (*Id.*, PageID.90).  Despite multiple suicide attempts, she had not sought emergency treatment or hospitalizations "on purpose" due to her fear of being institutionalized.  (*Id.*, PageID.90).  Around the time of her workplace suicide attempt by medication overdose, she made a second suicide attempt by cutting herself and engaged in an ill-advised extramarital affair. (*Id.*).

On September 10, 2019, the ALJ determined that Greaves was not disabled. (*Id.*, PageID.49-58).  On June 14, 2020, the Appeals Council denied review of the ALJ's findings, making the ALJ's decision the final decision of the Commissioner.  (*Id.*, PageID.32-34).  The Appeals Council also declined to review evidence submitted by Greaves after the September 10, 2019 administrative decision.  Greaves timely filed for judicial review of the final decision on August 10, 2020.

### B.    Medical Evidence

1.    Evidence Pre-dating the September 10, 2019 Administrative Decision

In January 2018, Greaves sought mental health counseling at Advanced Counseling Services.  (*Id.*, PageID.256).  Greaves reported a history of bipolar

5

disorder in her teens and a recent panic attack at work.  (*Id.*, PageID.256).

Greaves denied alcohol use but reported using marijuana to reduce anxiety.  (*Id.*,

PageID.257).  In addition to the mental health conditions, she reported "long-

standing back pain" for which she saw a pain specialist.  (*Id.*, PageID.258).  Intake

records note good grooming, an appropriate affect, full orientation, and intact

memory but impulsivity, shaking, and excessive talking.  (*Id.*).  She reported that

she had threatened suicide " 'if her husband [left] her' " and had engaged in

cutting.  (*Id.*, PageID.259).  Intake staff noted the need for coping skills, a formal

psychiatric evaluation, and medication for a return to her prior level of

functioning.  (*Id.*).  Greaves was agreeable to the plan of treatment.  (*Id.*,

PageID.230).  A psychiatric diagnostic evaluation from the following month

found that she was cooperative, with appropriate attire and normal motor activity,

eye contact, and speech.  (*Id.*, PageID.262).  She was also found to be fully

oriented with normal memory and good judgment.  (*Id.*, PageID.263-264).

A March 2018 medication review states that Greaves' depression was

"significantly improved."  (*Id.*, PageID.265).  Greaves denied suicidal thoughts

for the past month and reported a decrease in "racing thoughts."  (*Id.*).

Counseling records from the following month note that Greaves continued to

experience mood swings.  (*Id.*, PageID.267).  A medication review from the same

month states that racing thoughts and that "hypersexual behavior" was "under

6

control." (*Id.*, PageID.268).  Greaves reported sleep disturbances. (*Id.*).  In May

2018, Greaves reported that she had discontinued a psychotropic medication due

to the side effect of sleepiness.  (*Id.*, PageID.270).  She was advised to discontinue

her daily marijuana use.  (*Id.*).  The same month, Greaves reported that she was

able to perform all household chores.  (*Id.*).  She exhibited a normal gait.  (*Id.*,

PageID.273).  Dr. Deogun remarked that Greaves was trying to "wean off" the use

of opioids.  (*Id.*).  June 2018 records by Dr. Farzin Namei, M.D. state that Greaves

became sick after drinking water and eating "a lot" of fruit on a recent trip to

Mexico.  (*Id.*, PageID.294).  She denied that she was required to forego medical

treatment due to financial constraints.  (*Id.*, PageID.268).  She exhibited a normal

mood and affect.  (*Id.*).  Dr. Namei observed normal motor strength and tone in all

extremities.  (*Id.*, PageID.297).

January through May 2018 records by Kuldip Deogun M.D., director of

Chronic Pain Institute, note Greaves' report of chronic back and bilateral leg pain.

(*Id.*, PageID.272-282).  In January 2018, she rated her pain as a "5" on a scale of 1

to 10.  (*Id.*, PageID.281).  She reported that she was independent in personal care

activities and engaged in social activities with friends and family once or twice a

week.  (*Id.*).

In July 2018, Jose Mari G. Jurado, M.D. performed a one-time physical

consultative examination on behalf of the SSA, noting Greaves' report of chronic

neck, shoulder, hand, low back, thigh, and foot pain.  (*Id.*, PageID.283).  Dr. Jurado noted that a Phalen's test was positive bilaterally.[1]  (*Id.*, PageID.284). Greaves exhibited a reduced range of upper and lower body range of motion.  (*Id.*, PageID.285).  Dr. Jurado observed a positive Valsalva sign of the cervical and lumbar spine.[2]  (*Id.*).  He noted that Greaves' ability to pick up coins was "slow." (*Id.*, PageID.288).  A July 2018 medication review states that Greaves was "doing much better" with reduced depression and mood swings.  (*Id.*, PageID.323).  A September 2018 medication review notes Greaves' report of "financial hardship." (*Id.*, PageID.321).

In August 2018, Tariq Mahmood, M.D. completed a non-examining review of the treating and consultative records on behalf of the SSA.  (*Id.*, PageID.101, 104-106).  He found that Greaves could lift or carry 20 pounds occasionally and 10 frequently; sit, stand, or walk for around six hours in an eight-hour workday; and push and pull without limitation.  (*Id.*, PageID.104-105).  He found that Greaves could perform occasional postural activity.  (*Id.*, PageID.105).  He found

---

[1] Phalen's test is a clinical test used in the diagnosis of Carpal Tunnel Syndrome.  https://www.physio-pedia.com/Phalen%E2%80%99s_Test. (Last visited December 30, 2021).  Phalen's test is considered positive when the subjection experiences burning, tingling, or numbness "in the distribution of the median nerve."  *Id.*

[2] Among its other diagnostic uses, the Valsalva test is used to confirm lumbar and cervical radiculopathy caused nerve compression.  https://www. physio-pedia.com/Valsalva_Test.  (Last visited December 30, 2021).

the absence of manipulative, visual, communicative, or environmental limitation. (*Id.*). Dr. Mahmood cited Dr. Jurado's observation of no significant muscle atrophy and May 2018 treating records showing 5/5 strength. (*Id.*, PageID.102).

October 2018 counseling records state that Greaves had been canceling appointments and was not working on improving her mental state or coping skills. (*Id.*, PageID.320). The same month, Greaves received bilateral sacral lumbar joint injections. (*Id.*, PageID.344). Dr. Deogun's records from the following month note Greaves' report of level "8" chronic pain exacerbated by standing, bending, twisting, walking, and sitting. (*Id.*, PageID. 331). Greaves reported hand and foot numbness. (*Id.*). A medication review from December 2018 notes that Greaves was "doing better off and on," became irritable for no reason, and experienced sleep disturbances due to back pain. (*Id.*, PageID.348).

January 2019 counseling records state that Greaves was making recommended behavioral changes. (*Id.*, PageID.353). The same month, she underwent joint injections for lower back pain. (*Id.*, PageID.360). A February 2019 medication review states that a current medication made her drowsy. (*Id.*, PageID.350). The following month, she sought pain management treatment radiated lower back pain. (*Id.*, PageID.354-357).

In March 2019, Angel Marsiglio, LMSW, completed a mental impairment questionnaire, noting that she had treated Greaves since January 2018.  (*Id.*, PageID. 365).  She stated that Greaves was cooperative, talkative, and medication compliant.  (*Id.*).  She noted that Greaves was nonetheless "extremely impulsive, angry, unpredictable, [could] be violent, [and] compulsive."  She observed the symptoms of suicidal ideation, decreased energy, anxiety, paranoia, emotional withdrawal, mood swings, hallucinations, sleep disturbances, and panic attacks. (*Id.*, PageID.366).  Marsignlio found that Greaves' back condition exacerbated her mental problems.  (*Id.*, PageID. 367).  In a separate "Ability to do Work-Related Activites (Mental)" form, Marsiglio found that Greaves would be unable to meet competitive standards or had no useful ability to function in the following categories:

· Maintaining attention for two hours;
· Maintaining regular attendance;
· Sustaining an ordinary routine
· Working in coordination or proximity to others;
· Completing a workday or workweek psychologically based interruption;
· Accepting instruction
· Getting along with others
· Dealing with work-related stress;
· Setting realistic goals
· Dealing with the challenges of semiskilled or skilled work;

10

·      Traveling to unfamiliar places; and,

·      Using public transportation.

(*Id.*, PageID.369-370).  Marsiglio found that Greaves would be expected to miss more than four days of work each month due to psychological symptoms.  (*Id.*, PageID.370).

Dr. Namei's records from the following month note that Greaves was able to engage in "moderate" exercise despite the back condition.  (*Id.*, PageID. 372). Greaves denied missing medical appointments in the past 12 months due to financial constraints.  (*Id.*, PageID.373).  She reported that she was "happy/content" with a normal activity level and "no fatigue."  (*Id.*).  She exhibited a normal mood, good judgment, and normal memory.  (*Id.*, PageID.374).  She exhibited normal movement in all extremities and normal strength.  (*Id.*).  In September 2019, Greaves underwent additional joint injections. (*Id.*, PageID.377).

2.      Evidence Post-Dating the September 10, 2019 Administrative Decision

On November 4, 2019, Marsiglio opined that Greaves was unable to sustain employment due to symptoms of borderline personality disorder characterized by mood swings with violent tendencies, outbursts in public, paranoia, and road rage. (*Id.*, PageID.44-45).  On November 6, 2019, psychiatrist Ahmadul Hasan, M.D. composed a letter on behalf of Greaves' disability claim, noting that as of

September 2019, Greaves had been diagnosed with borderline personality disorder characterized by pressured speech, flight of ideas, distractibility, mood swings, violent tendencies, impulsivity, and suicide attempts.  (*Id.*, PageID.43).  He noted that Greaves would need financial support because she was "not able to keep or maintain a job."  (*Id.*).

### III.  Framework for Disability Determinations (the Five Steps)

Under the Act, DIB and SSI are available only for those who have a "disability."  *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).  The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The Commissioner's regulations provide that a disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.

> Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.

> Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least

twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.

Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Carpenter v. Comm'r of Soc. Sec.*, No. 08-10279, 2008 WL 4793424, at *4 (E.D. Mich. Oct. 31, 2008), citing 20 C.F.R. § 416.920; *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001); 20 C.F.R. § 404.1520.  "The burden of proof is on the claimant throughout the first four steps. . . .  If the analysis reaches the fifth step without a finding that claimant is not disabled, the burden transfers to the [Commissioner]." *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

Following this five-step sequential analysis, the ALJ found that Greaves was not disabled under the Act.  At Step One, the ALJ found that Greaves had not engaged in substantial gainful activity since the alleged onset date of November 27, 2017 thorough the date of the decision.  (ECF No. 9, PageID.51).  At Step Two, the ALJ found that she had the severe impairments of "complex chronic upper and lower back pain syndrome with positive Valsalva in the cervical and

lumbar spine; facet syndrome; neuropathy; bilateral rotator cuff impingement syndrome; bipolar disorder and generalized anxiety disorder." (*Id*.).  At Step Three, the ALJ found that Greaves' impairments, whether considered alone or in combination did not meet or medically equal a listed impairment.  (*Id*., PageID.52).

The ALJ then assessed Greaves' residual functional capacity ("RFC"), concluding that she was capable of performing light work with the following additional limitations:

> [N]o climbing of ladders, ropes or scaffolds, no crawling, no more than frequent balancing, no more than occasional climbing of ramps, stairs, stooping, crouching, and kneeling, no exposure to hazardous machinery or unprotected heights; work is limited to simple, routine tasks, no production rate pace, no interaction with the public and no more than occasional interaction with coworkers and supervisors, with no tandem tasks being required.

(*Id*., PageID.53).

At Step Four, the ALJ found that Greaves was unable to perform any past relevant work.  (*Id*., PageID.56).  Citing the VE's testimony, the ALJ found at Step Five that Greaves could perform the light, unskilled jobs of cleaner (143,000 jobs in the national economy), hand packager (42,000), and assembler (52,000).  (*Id*., PageID.57).  As a result, the ALJ concluded that Greaves was not disabled under the Act.  (*Id*., PageID.58).

IV.   Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision under 42 U.S.C. § 405(g).  Although the court can examine portions of the record that were not evaluated by the ALJ, *Walker v. Sec. of Health & Hum. Servs.*, 884 F.2d 241, 245 (6th Cir. 1989), its role is a limited one.  Judicial review is constrained to deciding whether the ALJ applied the proper legal standards in making his or her decision, and whether the record contains substantial evidence supporting that decision.  *Tucker v. Comm'r of Soc. Sec.*, 775 F. App'x 220, 224–25 (6th Cir. 2019)); *see also Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007) (noting that courts should not retry the case, resolve conflicts of evidence, or make credibility determinations); *Biestek v. Comm'r of Soc. Sec.*, 880 F.3d 778, 783 (6th Cir. 2017)(same).

An ALJ's factual findings must be supported by "substantial evidence." 42 U.S.C. § 405(g).  The Supreme Court has recently explained what that term means:

> Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficient evidence to support the agency's factual determinations.  And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high.  Substantial evidence, this Court has said, is more than a mere scintilla.  It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal quotations omitted).

In making "substantial evidence" the relevant standard, the law preserves the judiciary's ability to review decisions by administrative agencies, but it does not grant courts the right to review the evidence de novo. *Moruzzi v. Comm'r of Soc. Sec.*, 759 F. App'x 396, 402 (6th Cir. 2018) ("The substantial-evidence standard . . . presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts.") (quoting *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009)). An ALJ's factual findings are therefore subject to multi-tiered review, but those findings are conclusive unless the record lacks sufficient evidence to support them. *Biestek*, 139 S. Ct. at 1154.

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding even if there is substantial evidence in the record that would have supported an opposite conclusion." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (internal quotations omitted). Finally, even if the ALJ's decision meets the substantial evidence standard, "a decision of the Commissioner

16

will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (internal quotations omitted).

## V.    Analysis

### A.    The Psychological Limitations

Greaves argues that ALJ erred at Step Three of the sequential disability analysis by finding no more than moderate limitation in the domains of understanding, remembering, or applying information; interacting with others; and maintaining concentration, persistence or pace.  (ECF No. 11, PageID.293-403)((ECF No. 9, PageID.52-53).  She also faults the ALJ's finding of only mild limitation in adapting or managing herself.  (*Id.*).  She contends that the failure to acknowledge her full degree of psychological impairment is based on the ALJ's erroneous rejection of the allegations of limitation and failure to credit the opinions of the treating providers.  (*Id.*).

In turn, the Commissioner argues that the ALJ's finding of no more than moderate psychological limitation in each of the four categories is supported by substantial evidence and adequately explained.  (ECF No. 17, PageID.423-440).

#### 1.    Listings 12.04 and 12.06

At Step Three of the sequential evaluation process, Greaves bears the burden of establishing that her impairments meet or medically equal a listing. *See Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004). To prevail, she must prove that her impairments meet "*all* of the specific medical criteria" in the listing, or "present medical findings equal in severity to *all* of the criteria for the one most similar listed impairment." *Sullivan v. Zebley*, 493 U.S. 521, 530-31 (1990) (emphasis in original).

For a disability finding at Step Three under the "B Criteria" of Listings 12.04 (affective disorder), and 12.06 (anxiety-related disorder), Greaves was required to show one extreme limitation or two marked limitations in the following areas:

> 1. understand, remember, or apply information;
>
> 2. interact with others;
>
> 3. concentrate, persist, or maintain pace;
>
> 4. adapt or manage oneself.

20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 12.04, 1206. A "marked" limitation indicates that the ability to act independently, appropriately, and effectively is "seriously limited." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(C). An "extreme" limitation indicates the inability to function. *Id.*

18

Substantial evidence supports the ALJ's finding of no more than moderate psychological limitation in any of the four areas.  In understanding, remembering, or applying information, the ALJ found that Greaves' ability to prepare simple meals, attend doctors' appointments, drive, and provide her work and medical history supported the finding of only moderate limitation.  (ECF No. 9, PageID.52).  The ALJ also cited treating physician Dr. Namei's finding of normal memory skills.  (*Id.*, PageID.55-56, 259, 263-264, 374).  The ability to "prepare simple meals, manage money, drive, shop and do some routine household chores," supports a finding of only moderate limitation in understanding, remembering, or applying information.  *Hutchins v. Comm'r of Soc. Sec.*, No. 3:19-CV-523-DJH-CHL, 2020 WL 7382303, at *10 (W.D. Ky. July 31, 2020), *report and recommendation adopted,* No. 3:19-CV-523-DJH-CHL, 2020 WL 7024482 (W.D. Ky. Nov. 30, 2020).  The treating records showing unimpaired memory and ability to take medication as prescribed is also consistent with the finding of no more than moderate limitation in this domain.  *See Mitchell v. Comm'r of Soc. Sec.*, No. 1:19-CV-1401, 2020 WL 1316350, at *8 (N.D. Ohio Mar. 12, 2020), *report and recommendation adopted sub nom. Mitchell v. Comm'r of Soc. Sec. Admin.*, No. 1:19 CV 1401, 2020 WL 1322862 (N.D. Ohio Mar. 20, 2020).  The absence of inpatient or emergency treatment for psychological symptoms also supports the finding of only moderate limitation.  *See Neal v. Comm'r of Soc. Sec.*, No. 18-

10709, 2019 WL 2208555, at *16 (E.D. Mich. Jan. 31, 2019)(Morris,

M.J.), *report and recommendation adopted,* No. 18-10709, 2019 WL 1306162

(E.D. Mich. Mar. 22, 2019)(Ludington, J.)(Ability to maintain home, drive, and

shop, coupled with subsequent observation that the plaintiff did not require

emergent care adequately supported finding of moderate limitation in

understanding, remembering, or applying information).

In finding only moderate limitation in the domain of interacting with others,

the ALJ relied on Greaves' ability to live with her husband and children, interact

well with medical staff, and appear comfortable at medical appointments.  (ECF

No. 9, PageID.52, 248, 251, 275, 365, 373).  Courts have found similar evidence

to be consistent with a finding of a moderate limitation.  *See Thacker v. Soc. Sec.*

*Admin.*, 93 F. App'x 725, 729, 2004 WL 504354, at *3 (6th Cir. 2004)(Despite

Thacker's claims that he spent most of his time at home, treatment notes

indicating that he was "cooperative, friendly, and attentive" support finding of

moderate limitation in interacting with others).  Contrary to Greaves' claim that

the ALJ failed to acknowledge or properly credit her report of work-place

disruption due to psychological symptoms, the ALJ elsewhere observed that the

Greaves' alleged inability to interact with coworkers or customers and road rage

were unsupported by inpatient hospital, emergency room, or police reports

supporting the claims of disabling psychological disturbance.  (*Id.*, PageID.55).

The ALJ found that Greaves' claim of problems interacting with others was undermined by her ability to travel to Mexico, which would require "traveling and having to be around other people while traveling."[3]  (*Id.*, PageID.56).

The ALJ supported her finding of moderate limitation in maintaining concentration, persistence, or pace by noting that Greaves was able to "drive, prepare meals, and handle her own medical care." (*Id.*, PageID.53).  The ALJ observed that despite Greaves' allegations of problems in focus and concentration, the record "fail[ed] to show any mention of distractibility." (*Id.*, PageID.52-53). The ALJ later noted that treating records showed normal recent and remote memory and the improvement in psychological symptoms with the use of medication within a year of the alleged onset of disability.  (*Id.*, PageID.56).

In the area of adapting and managing oneself, the ALJ supported the findings of only mild limitation by observing that Greaves was able to perform self-care tasks, appeared well-groomed at treating care appointments, and did not exhibit "problems with temper control." (*Id.*, PageID.53).  While Greaves argues that the record contains evidence of greater than mild adaptive limitation, the

---

[3] In Greaves' reply brief, she faults the ALJ for using the Mexico trip to discount her claims of limitation without eliciting testimony as to "the details and nature of her trip [or] the purpose." (ECF No. 18, PageID.449).  However, Greaves does not claim that the trip was made for non-recreational purposes.  The treating records stating that "during the trip she . . . got a tattoo" support the finding trip was a holiday vacation.  (ECF No. 9, PageID.294).

treating records show that she was able to live with her family and was noted to be well-groomed with appropriate attire and a cooperative attitude. (*Id.*, PageID.258-259, 262). *See Stanley v. Comm'r of Soc. Sec.*, No. 20-11678, 2021 WL 3021265, at *4 (E.D. Mich. July 16, 2021)(Ivy, MJ)(Ability to live in "an independent setting without extraordinary psychosocial support" consistent with mild adaptive limitation).

### 2.    The ALJ's Analysis of the Subjective Claims

Greaves contends that the finding that she did not meet the B Criteria for Listings 12.04 and 12.06 is based on the erroneous rejection of her subjective claims. (ECF No. 11, PageID.395-403). Greaves faults the ALJ's finding that she could prepare meals, attend doctor's appointments, take medications, and drive but ignores her claim that she requires "constant reminders in order to stay focused" and performed these activities on a sporadic basis due to her psychological limitations. (*Id.*, PageID.397).

The Social Security Regulations establish a two-step process for evaluating a claimant's subjective symptoms, including pain. 20 C.F.R. § 404.1529(a); SSR 16-3p. According to Social Security Ruling ("SSR") 16-3p, an ALJ must analyze the consistency of the claimant's statements with the other record evidence, considering his testimony about pain or other symptoms with the rest of the relevant evidence in the record and factors outlined in SSR 16-3p, 2016 WL

1119029 (Mar. 16, 2016).  This analysis and the conclusions drawn from it –
formerly termed a "credibility" determination – can be disturbed only for a
"compelling reason."  *Sims v. Comm'r of Soc. Sec.*, 406 F. App'x 977, 981 (6th
Cir. 2011); *see also Dooley v. Comm'r of Soc. Sec.*, 656 F. App'x 113, 119 n.1
(6th Cir. 2016) (explaining that SSR 16-3p merely eliminated "the use of the word
'credibility' ... to 'clarify that subjective symptom evaluation is not an
examination of an individual's character.'").

     The ALJ must first confirm that objective medical evidence of the
underlying condition exists, and then determine whether that condition could
reasonably be expected to produce the alleged pain, considering other evidence,
including: (1) daily activities; (2) location, duration, frequency, and intensity of
pain; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and
side-effect of any medication; (5) treatment, other than medication received; (6)
any means used to relieve pain; and (7) other factors concerning functional
limitations.  20 C.F.R. § 404.1529(c)(3); SSR 16-3p.

     An ALJ's subjective symptom evaluation is given great weight and should
not be disturbed "absent compelling reason."  *Smith v. Halter*, 307 F.3d 377, 379
(6th Cir. 2001).  At the same time, "such determinations must find support in the
record."  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007).

The ALJ acknowledged Greaves' allegations of psychological limitation, including loss of interest in all activities, difficulty concentrating, memory problems, impulsivity, sleep disturbances, pressured speech, guilt, low self-esteem, suicidal thoughts, agitation, and appetite changes. (ECF No. 9, PageID.54). She cited Greaves' functional report of "verbal fights with family and neighbors;" the inability to use social media "or go places;" a short attention span; panic attacks; and fear of being in public. (*Id.*). She cited Greaves' testimony of suicide attempts, and the medication side effects of drowsiness. (*Id.*).

As a threshold matter, Greaves' contention that the ALJ was required to restate her testimony or functional report line-by-line is without merit. It is well settled that the ALJ "can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party." *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006).

The ALJ provided a fulsome discussion of Greaves' allegations and the reasons for their partial rejection. She acknowledged the claims of concentrational problems but cited treating records showing normal memory and the ability to attend appointments on a regular basis. (ECF No. 9, PageID.55). The ALJ observed that Greaves' claim of panic attacks, anxiety in public places, and inability to interact appropriately with others was undermined by her ability to

travel to Mexico on vacation, which would involve interacting with others and being in public for significant periods of time.  (*Id.*, PageID.56).  The ALJ acknowledged Greaves' allegations of violent tendencies and road rage but noted that these claims were not supported by treating, hospital, or police records.  (*Id.*, PageID.55-56).

### 3.    Marsiglio's March 2019 Assessment

Greaves also faults the ALJ for declining to accept Angel Marsiglio's March 2019 finding of marked and extreme limitation in multiple areas of psychological functioning and that Greaves was "extremely impulsive, angry, unpredictable, [could] be violent, [and] compulsive."  (ECF No. 11, PageID.399-400)(ECF No. 9, PageID.366, 367-368).

Under 20 C.F.R. § 404.1520c(b), the ALJ must articulate "how persuasive [she] find[s] all of the medical opinions and all of the prior administrative medical findings in [the claimant's] case record."  The ALJ evaluates the persuasiveness of the medical opinions and prior administrative medical findings by utilizing the following five factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors. § 404.1520c(c).  Supportability and consistency are the most important factors and the ALJ must explain how she considered these factors in her decision.  § 404.1520c(b)(2).

The ALJ found Marsiglio's finding of more extreme limitation "less than persuasive." (ECF No. 9, PageID.55). She found "little in terms of objective evidence" to support Marsiglio's findings of extreme impulsivity, anger, violence and compulsiveness. (*Id.*). The ALJ observed that neither Marsiglio's "handwritten treatment notes" or police reports supported the claims of road rage. (*Id.*). She found "no evidence" supporting Marsiglio's statement that Greaves would miss work more than four days each month, noting Greave's ability to attend counseling and medical appointment regularly. (*Id.*). Although the ALJ found that Marsiglio's findings were generally unsupported by the record, she nevertheless included restrictions of no interaction with the public and only occasional interaction with coworkers and supervisors in the RFC.[4] (*Id.*). Aside from Greaves' subjective claims, the record does not support a more restricted RFC.

4.      Evidence Submitted Subsequent to the ALJ's Determination

---

[4]Greaves makes a one-sentence argument that the ALJ failed to address the "inconsistencies" in James Tripp, ED.D.'s non-examining findings. (ECF No. 11, PageID.396)(ECF No. 9, PageID.103). "Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." *McPherson v. Kelsey*, 125 F.3d 989, 995-996 (6th Cir. 1997)(citation omitted). Further, the ALJ did not adopt Dr. Tripp's findings of only mild limitation in understanding, remembering, or applying information or in interacting with others but instead found moderate limitation in both areas. Greaves fails to explain how she has been prejudiced by the lack of discussion of Dr. Tripp's records.

Greaves also cites November 2019 letters by Marsiglio and treating psychiatrist Dr. Hasan stating that Greaves was disabled due to mood swings, violent tendencies, road rage, and paranoia.  (*Id.*, PageID.43-45).  Both sources state that Greaves was diagnosed with borderline personality disorder in September 2019.  (*Id.*, PageID.43-44).   However, the Commissioner correctly states that the Appeals Council considered this evidence but declined to review based on the lack of reasonable probability that the newer evidence would change the outcome of the case.  (ECF No. 17, PageID.438) (ECF No. 9, PageID.32-34).  The Commissioner cites *Cline v. Comm'r of Soc. Sec*., 96 F.3d 146, 148 (6th Cir. 1996) which holds that where the Appeals Council considers but declines to review the evidence submitted following the ALJ's decision, "the district court cannot consider that new evidence in deciding whether to uphold, modify, or reverse the ALJ's decision." (ECF No. 17, PageID.438).

For a remand for review of the newer records under the sixth sentence of 42 U.S.C. § 406(g), the claimant must show that the "new evidence is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding ..."  To satisfy the "materiality" requirement for a "Sentence Six" remand, a claimant "must demonstrate that there was a reasonable probability that the Secretary would have reached a different disposition of the

disability claim if presented with the new evidence." *Sizemore v. Sec'y of HHS*, 865 F.2d 709, 711 (6th Cir. 1988).

Greaves cannot show a reasonable probability that any of the new evidence would change the ALJ's determination.  The reports of mood swings, violent tendencies, road rage, and paranoia were considered and addressed by ALJ's partial rejection of Marsiglio's March 2019 opinion.  Greaves has not supplied good cause for the tardy submission of the new material.  The letters state that Greaves was diagnosed with borderline personality disorder in September 2019 but do not indicate if the diagnosis was made before or after the ALJ's September 10, 2019 decision.  The newer evidence does not include the actual diagnosis. While Dr. Hasan's letter states that the diagnosis was "confirmed" in September 2019, Greaves makes no effort to explain why the diagnosis and evidence was not added to the record prior to the ALJ's decision.  Post-decision evidence created for the purpose of rebutting an ALJ's decision does not satisfy the "good cause" requirement of the sixth sentence of § 405(g).  *Haney v. Astrue*, No. 5:07CV188-J, 2009 WL 700057, at *6 (W.D. Ky. Mar. 13, 2009)("[G]ood cause contemplates more than strategic delay, or sandbagging, of evidence and more than simple miscalculation of the necessity of producing such evidence in the first instance to establish a claim of disability")(citing *Thomas v. Sec'y*, 928 F.2d 255, 260 (8th Cir. 1991)).

Because the ALJ sufficiently articulated and supported her Step Three findings, the partial rejection of Greaves' subjective claims, and her reasons for finding Marsiglio's opinion "less than persuasive," the conclusion that the psychological limitations were not disabling should remain undisturbed

### B.      The Physical Conditions

Greaves' second argument is that the ALJ erred by finding that Dr. Mahmood's non-examining review of the treating and consultative records was "[i]n general . . . consistent with her own findings."  (ECF No. 11, PageID.403-405)(ECF No. 9, PageID.54).  In turn, the Commissioner argues that Dr. Mahmood's findings were reflected by the treating records and that the RFC for a limited range of exertionally light work is supported by substantial evidence. (ECF No. 17, PageID.440-443).

Greaves further develops this argument in her reply brief, contending that Dr. Mahmood's findings failed to reflect Dr. Jurado's consultative examination records showing manipulative limitation.  (ECF No. 18, PageID.450).  In sur-reply, the Commissioner disputes that the ALJ overlooked Dr. Jurado's consultative findings or accepted Dr. Mahmood's findings without reservation. (ECF No. 21, PageID.459).

Greaves' argument fails for multiple reasons.  First, the ALJ acknowledged and discussed Dr. Jurado's July 2018 findings.  (ECF No. 9,

PageID.55).  The ALJ found Dr Jurado's opinion "not persuasive" on the basis that Greaves' ability to bear weight, balance on one leg and squat without support contradicted Dr. Jurado's finding that she was incapable of repetitive continuous activity and required 10 to 15-minute rest periods after every hour.  (*Id.*).  Second, Greaves' claim that Dr. Mahmood's assessment erroneously failed to consider her manipulative limitations set forth in Dr. Jurado's report is incorrect.  Dr. Mahmood explicitly cited Dr. Jurado's finding of a positive Phalen's test in both hands, and also cited treating records showing 5/5 motor strength in all extremities.  (*Id.*, PageID.102).  Consistent with Dr. Mahmood's findings, the June 2018 and April 2019 treating records show normal motor strength and tone, normal movement in all extremities, and normal gait and station.  (*Id.*, PageID.297, 374).  The treating records showing full strength and normal extremity movement support the absence of manipulative limitations in the RFC.  Third, the ALJ did not adopt Dr. Mahmood's findings verbatim, noting that while Dr. Mahmood limited Greaves to occasional balancing, the record showed that she was capable of balancing on a frequent basis.  (*Id.*, PageID.54).  Fourth, the ALJ acknowledged Greaves' report to her treating sources of significant back and radiating pain but that the record did not contain any imaging studies to support the claims.  (*Id.*, PageID.56).  Fifth, the ALJ observed that despite Greaves' physical complaints, she did not seek more aggressive treatment.  *See Biestek v.*

*Comm'r of Soc. Sec.*, 880 F.3d 778, 789 (6th Cir. 2017)(Claimant's allegations of limitation permissibly discounted by her failure to

seek aggressive treatment), *aff'd sub nom. Biestek, supra*, 139 S. Ct. 1148. Finally, the ALJ observed that Greaves' ability to go to Mexico, which would necessarily involve traveling and sitting "on the planes without difficulty" for extended periods, undermined her claim of disabling physical limitations.

## C.    In Sum

The record clearly shows that Greaves experienced some degree of work-related limitation.  She reported that she had a nervous breakdown at work in November 2017.  But the record also shows that her condition improved significantly with the help of counseling and psychotropic medication within the first half of 2018.  While Greaves cites portions of the record to support her claim of manipulative limitation, substantial evidence, coupled with the lack of imaging studies confirming these claims also supports the conclusion that she could perform a limited range of light work as set forth in the RFC.

Because the ALJ's determination was within the "zone of choice" accorded to the fact-finder at the administrative hearing level, it should not be disturbed by this Court.  *Blakley, supra,* 581 F.3d at 406.

IV.    Conclusion

For the reasons set forth above, it is RECOMMENDED that the

Commissioner's motion (ECF No. 17) be GRANTED and that Greaves' motion

(ECF No. 11) be DENIED.

Dated: January 11, 2022                    s/Kimberly G. Altman
Detroit, Michigan                          KIMBERLY G. ALTMAN
                                           United States Magistrate Judge

## NOTICE TO PARTIES REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Report and

Recommendation.  Any objections must be filed within 14 days of service, as

provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).

Failure to file specific objections constitutes a waiver of any further right of

appeal.  *Thomas v. Arn*, 474 U.S. 140, 144 (1985); *Howard v. Sec'y of Health &*

*Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991).  Filing objections that raise

some issues but fail to raise others with specificity will not preserve all the

objections a party might have to this Report and Recommendation.  *Willis v. Sec'y*

*of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit*

*Fed'n of Teachers, Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Under Local

Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No.

2," etc.  Any objection must recite precisely the provision of this Report and

Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First-Class U.S. mail addresses disclosed on the Notice of Electronic Filing on January 11, 2022.

s/Carolyn Ciesla
CAROLYN CIESLA
Case Manager